UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT


UNITED STATES OF AMERICA      ]
                              ]
     v.                       ]      Criminal No. 2:07-CR-127
                              ]
DAVID FILIPOWSKI              ]

                        MEMORANDUM AND ORDER

Defendant David Filipowski filed motions to suppress statements given to police officers (Doc. 37) and evidence obtained through a search of his residence (Doc. 38). He asserts his statements were the product of custodial interrogation without his being advised of his Miranda rights. Alternatively, he argues his statements were involuntary due to the coercive techniques employed by law enforcement officers and his mental condition. Next he argues that he did not freely and voluntarily consent to a search, and that his consent, if voluntary, was limited to searching for a suicide note. For the reasons given below, the court finds Douglas was not in custody at the time of his consent and that Miranda warnings were not required. The Court also finds that his statements and his consent to permit officers to search his residence were freely, knowingly and voluntarily given, and that his consent was not limited to authorizing a search for a suicide note. The motions to suppress are therefore denied.

On October 17, 2007, at 6:36 p.m., the defendant made a 911 call regarding his partner's suicide at 8 Strong Street, Apartment B in Burlington. The decedent, Chris Arroll, had shot

himself on the back porch of the residence with a handgun.  Sgt. Art Cyr and Officer Matt Sullivan responded to the call.  After entering the residence, they found the decedent on the porch attended by members of the Burlington Fire Department.  They also spoke with the defendant who was putting on his coat and had begun to walk out of the house.  Cyr stopped him outside of the residence to ask him some questions about the incident. Filipowski told Cyr he had been asleep and when he awoke he saw that Arroll had shot himself.

Since the police were investigating the matter as an untimely death, they secured the apartment.  Cyr asked Filipowski to go to the Burlington Police Station to answer some further questions.  The station was less than one mile away and Filipowski agreed. Prior to leaving the residence, Filipowski approached his computer to turn it off.  Since police were attempting to secure the environment to conduct the investigation, Lt. Emmet Helrich told him not to turn it off and to leave the room just as police had found it.  Officer Chris Young then drove Filipowski to the station.

Officer Young took Filipowski to a room used both for witness and defendant interrogations.  He did not secure Filipowski in any way.  Filipowski appeared to Young to be calm and lucid.  During the course of the evening Filipowski took a number of smoking breaks outside of the station.  On some occasions he was with officers, and on others he was alone.  At no time was he handcuffed or restricted in any way. His

2

interviews were all videotaped.

Lt. Helrich remained at the crime scene for only a few minutes after Filipowski's departure. Since the police were treating the residence as potentially a crime scene, Helrich returned to the station to seek Filipowski's consent to conduct a search. Helrich told Filipowski he did not want to go into his personal lifestyle, but they needed to know whether a crime had been committed. Again, Filipowski appeared calm and able to understand the request. The defendant then signed a written consent form. The consent form was witnessed by Officer Young. There was no mention of limiting the scope of the search in any way, including to the recovery of a suicide note.

Police made several observations within the apartment that were of concern. They recovered a camera and tripod in the bedroom. There were homemade videos, one of which was entitled "torture." The videos showed the defendant engaging in extreme self-torture in the bedroom with photos of young boys in the background. They found guns in the apartment which could have been used in torture activity. There was evidence of stale blood on each wall of the unit. Other evidence included sex toys and evidence of self-torture or mutilation. There were also photographs of young boys. As a result of these observations, the officers contacted Detective Carlson who, at that time, was assigned to the special investigations unit and was an expert in child abuse and pornography investigations.

Carlson arrived at around 8:20 p.m. He saw a folding

ladder, rings attached to various items, blood throughout the unit and photographs of young children. He also went to a computer which was still on. He scrolled down and observed reference to child pornography. He went into the bedroom and found a notebook in the bureau. The notebook included graphic drawings of sexual abuse of children.

Detectives Carlson and Charland met with Filipowski at the station at about 9:30 p.m. Again the interview was in the same interrogation room and videotaped. Filipowski appeared calm but somber. The detectives told him of recovery of the notebook. He said it was his notebook although he had not reviewed it in many years. Filipowski denied being a child abuser. Carlson asked for consent to search his computer. Filipowski refused. The officers then asked for permission to search for things like those found in the notebook, and Filipowski agreed. The consent was given at about 10:00 p.m. Carlson then returned to the residence while Detective Petralia stayed with the defendant. During this whole period of time, Filipowski was never handcuffed nor restricted in any way. He continued to take cigarette breaks outside.

After another hour passed, Filipowski told Petralia he wanted to return to his home. Petralia then called the officers at the residence who told him they would be finished in about twenty minutes. Petralia then took the defendant in his car driving around Burlington until the officers completed the investigation. Sometime near midnight, Petralia dropped the

4

defendant at his home.  As the defendant entered the residence, he met Detective Carlson.  Carlson told the defendant they found printed images of child pornography and they had seized the computers.  Carlson said Filipowski knew what they were going to find on the computers.  Filipowski said he did not want to talk and went into the residence.  Eventually, the officers obtained warrants to search the computers.

Filipowski raises several issues in his suppression motion.  First, he argues he was subjected to custodial interrogation without Miranda rights being read to him.  Second, he asserts he was distraught and subjected to coercive interrogation techniques and that, as a result, his statements were involuntary.  He also objects to the search of his residence, claiming he did not freely and voluntarily consent to the search.  Filipowski also claims that any consent was limited in scope to permitting a search of his residence to recover a suicide note and that the subsequent search went beyond the search authorized by his consent.  Finally he argues the search warrants to search and seize the computers were invalid because they were authorized based upon the earlier illegal searches.

Under *Miranda v. Arizona*, police officers may not interrogate suspects who have been taken into custody or otherwise deprived of their freedom in any significant way without advice of rights. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).  An individual is in custody for *Miranda* purposes when "his freedom of action has been 'curtailed to a degree associated

5

with formal arrest.'" *United States v. Newton*, 369 F.3d 659, 671 (2d Cir. 2004) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Key factors include "whether a reasonable person in the suspect's shoes would have understood that his detention was not likely to be 'temporary and brief,'" and whether he "would feel that he was 'completely at the mercy of the police.'" *Id*. at 675 (quoting *Berkemer v. McCarty*, 468 U.S. at 437, 438). The court must consider "all the circumstances presented" to determine whether the standard for custodial interrogation has been met. *Id.* at 677.

Filipowski argues he was detained when he was told not to turn off the computer at his residence. Alternatively he claims to be in custody during the various interviews conducted by police at the station. Based upon a review of the evidence submitted at the hearing and the video of the exchanges with police, the Court finds Filipowski was not in custody at any time during the evening, and that the officers were therefore not required to provide *Miranda* warnings. At no time did officers restrain Filipowski in any significant way. Officers never placed him in handcuffs or restricted his liberty of movement. He remained free to take smoke breaks at the station unaccompanied by police. Police never suggested he was under arrest. For most of the evening he was considered merely a witness and not a suspect. The only restriction placed upon his movement was that he could not return to his home until the investigation at the home had been completed. A reasonable

6

person in Filipowski's shoes would not consider himself to be subject to a formal arrest, or for that matter restrained in any significant way.

The government has the burden to prove by a preponderance of the evidence the voluntariness of a confession or of a consent to search. *Colorado v. Connelly*, 479 U.S. 157, 169 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006). Courts look to the totality of all the circumstances, such as age, education, intelligence and mental or physical condition of the person, as well as the circumstances surrounding the statement or consent, including the location and length of detention, repeated or prolonged questioning, physical restraints or punishment, and whether a suspect was advised of his right to refuse to consent. *Schneckloth*, 412 U.S. at 226; *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir. 1988).

To begin with, each officer treated Filipowski respectfully. Officers testified that Filipowski was coherent and lucid during the entire evening. The Court reviewed the video of the exchanges between the defendant and police. Filipowski appeared calm but somber. At no time did he appear not to understand the questions asked by police, nor did he appear to be distraught. He appeared to understand the nature of the questions and he responded appropriately. He appeared to consent freely to the search of his residence. Perhaps the best evidence of his understanding of the nature of consent is in his refusal to

7

consent to the search of his computer.  In short, Filipowski freely and voluntarily answered questions posed by officers and he authorized search of his residence.

Filipowski also asserted that he limited his consent to the search of his residence to the recovery of a suicide note.  There is no evidence to suggest the consent was limited in this way.  The video and the testimony of the officers support the conclusion that the consent was not restricted in any way other than not permitting search of his computer, a request that was honored by the officers until they obtained a warrant the following day.  The search did not extend beyond the scope of his consent.

Finally, since the Court finds the searches conducted on the even of October 17th were constitutional, the warrants obtained to seize and search the computers were not tainted in any way.

For the reasons stated above, the Court hereby DENIES Filipowski's motions to suppress.


Dated at Burlington, Vermont this 3rd day of April, 2009.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge, U.S. District Court